## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JEFFREY D. TURNER,

                    Petitioner,                      Case Number: 2:07-CV-12739

v.                                          HONORABLE PAUL D. BORMAN
                                                  UNITED STATES DISTRICT JUDGE

CINDI CURTIN,

                    Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) GRANTING IN PART A CERTIFICATE OF APPEALABILITY

Petitioner Jeffrey D. Turner has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, challenges his convictions for first-degree premeditated murder, assault with intent to commit murder, first-degree home invasion, and felony firearm. For the reasons set forth below, the Court denies the petition.

## I.

Petitioner's convictions arise from events that occurred during the early morning hours of August 21, 2000 in the City of Detroit, leading to the shooting death of Felicia Watson and the shooting of Aradondo Collins. Watson had known Petitioner for several years before her death and the two had dated previously. Aradondo Collins was Watson's boyfriend at the time of the shooting.

Charlotte Watson, who was ten years old at the time of the trial, testified that she lived with her mother, Felicia Watson. During the early morning hours of August 21, 2000, she was asleep in her bedroom and her mother was sleeping in the next room. A doorway, without a door, separated her bedroom from her mother's. A sheet had been hung between the two rooms for privacy. Charlotte estimated she heard four gunshots that morning. Just before she heard the gunshots, she had seen Petitioner peek into the bedroom. After the gunshots were fired, she saw Petitioner chasing Collins.

Chonte Watson, Felicia Watson's eight-year-old daughter, testified that, on the night of the shooting, she was in her bed when she saw Petitioner climbing the stairs to the bedrooms. She heard three gunshots.

Aradondo Collins testified that he was dating Felicia Watson at the time of the shooting. He went to her home at approximately 11:00 or 11:30 p.m. on the evening of the shooting. At approximately 5:00 a.m., after he had fallen asleep in Felicia's bed, he heard creaking on the stairs leading to the bedrooms. Petitioner walked into the bedroom and confronted Collins, indicating that he did not like seeing Collins in Felicia's home. Felicia pushed Petitioner away from Collins. After Felicia continued to push Petitioner away, Petitioner went downstairs. Collins testified that, after a few minutes, Petitioner returned, raised a gun, and began shooting. Collins testified that he was struck by three bullets as he was attempting to flee the house. Petitioner followed him outside. When Collins ran across Finkel Street, Petitioner stopped and called to him, "You're not dead yet?" Collins also testified that, before he fled the bedroom, he saw Petitioner shoot

2

Felicia.

Dr. Leigh Hlavathy, an assistant medical examiner for Wayne County, testified that she performed an autopsy on Felicia Watson. Dr. Hlavathy determined that Felicia died from two gunshot wounds. She found evidence of close-range firing on both wounds.

## II.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree premeditated murder, felony murder, assault with intent to commit murder, first-degree home invasion, and felony firearm. On July 21, 2001, he was sentenced to life imprisonment for the first-degree murder conviction, 30 to 50 years for the assault conviction, 10 to 20 years for the home invasion conviction, and five years for the felony-firearm conviction. He received no sentence for the felony-murder conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

> I.    Defendant was denied due process of law under the United States Constitution where the prosecutor fails to timely provide full discovery regarding prior bad acts and the trial judge fails to make a balanced, refined decision concerning the admissibility of the information, all of which chills Defendant's right to testify and impairs his right to present a defense.

> II.   There is plain error under the United States Constitution where the prosecutor makes improper comment to the jury in opening statement and closing argument by making comment unsupported by evidence, commenting on Defendant's trial silence, and shifting the burden of proof.

> III.  Defendant was deprived of effective assistance of counsel by trial counsel's failure to press for full disclosure of the circumstances of Defendant's

felonious assault conviction, failure to press for a firm ruling on the admissibility of that information, failure to request an opportunity to make a proffer and failure to object to various improper arguments.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Turner*, No. 237038 (Mich. Ct. App. March 18, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Turner*, No. 123754 (Mich. Sept. 29, 2003).

Petitioner filed a motion for relief from judgment in the trial court, raising the following claims: (i) counsel was ineffective in persuading him not to testify; (ii) insufficient evidence was presented to support his convictions; (iii) prosecutor allowed false testimony to go uncorrected; and (iv) appellate counsel was ineffective for failing to raise these claims on direct appeal. The trial court denied the motion. *People v. Turner*, No. 00-10268-01 (Wayne County Circuit Court June 5, 2007).

Petitioner filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Turner*, No. 270348 (Mich. Ct. App. Nov. 28, 2006); *People v. Turner*, No. 132911 (Mich. May 30, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

I.    Defendant was denied due process of law under the United States Constitution where the prosecutor fails to timely provide full discovery regarding prior bad acts and the trial judge fails to make a balanced, refined

4

decision concerning the admissibility of the information, all of which chills Defendant's right to testify and impairs his right to present a defense. Const. Amend. V and XIV and Const. 1963 Art. 1, 17.

II.   There is plain error under the United States Constitution where the prosecutor makes improper comment to the jury in opening statement and closing argument by making comment unsupported by evidence, commenting on Defendant's trial silence, and shifting the burden of proof. Const. Amend. V and XIV and Const. 1963 Art. 1, 17.

III.   Defendant was deprived of effective assistance of counsel by trial counsel's failure to press for full disclosure of the circumstances of Defendant's felonious assault conviction, failure to press for a firm ruling on the admissibility of that information, failure to request an opportunity to make a proffer and failure to object to various improper arguments. U.S. Const. Am.; Const. 1963 Art. 1, 20.

IV.   Defendant was denied effective assistance of trial counsel under U.S. Const. Am. VI; Const. 1963 Art. 1, 20 where counsel gave Defendant the wrong ruling from the trial judge about suppressing Defendant's prior record.

V.   Defendant was denied his constitutional right to a fair trial under the due process clauses of the Fifth and Fourteenth Amendments where there was insufficient evidence to convict Defendant of first degree murder, first degree home invasion, and assault with intent to commit murder.

VI.   Prosecution failed to correct false testimony thereby denying the Defendant the right to due process at trial pursuant to U.S. Const. Ams. V, XIV; and Mich. Const. 1963 Art. 1 Sec. 17.

VII.   Defendant was denied effective assistance of appellate counsel under U.S. Const. 1963; Art. 1, 20 also under Sixth Amendment where counsel ignored obvious issues from trial record such as trial counsel failing to investigate witnesses before trial, waiving ballistic expert, not calling any witnesses on the Defendant's behalf.

The Court appointed counsel to represent Petitioner, has heard oral argument and received supplemental briefs.

## III.

5

## A.

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting*

6

*Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v.*

7

*Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**B.**

Petitioner's first claim for habeas corpus relief relates to prior bad acts evidence. He argues that he was denied his right to present a complete defense because the prosecutor failed to provide full discovery regarding his prior bad acts and the trial court failed to make a "balanced, refined decision" concerning the admissibility of the prior bad acts.  Petition at p. 9.  Petitioner argues that these violations rendered him unable to testify in his own defense.

"[A] criminal defendant has a fundamental constitutional right to testify on his own behalf."  *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir.1997) (citing *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987)).  The right to testify is "essential to due process of law in a fair adversary process."  *Rock*, 483 U.S. at 51.

8

The Michigan Court of Appeals held that Petitioner's right to testify was not

violated, stating, in relevant part:

> Defendant first argues that he was denied due process, and his right to testify
> in his defense was chilled, when the prosecutor failed to timely disclose
> prior bad acts and the trial court failed to issue a clear ruling on the
> admissibility of the prior bad acts evidence.  We disagree.  The issue arose in
> the context of defendant's pre-trial motion to redact portions of defendant's
> statement in which he referred to a prior felonious assault on the victim and
> prior possession of a gun.  Defendant sought to suppress all references to the
> prior convictions and bad acts.  At that point, it was unclear whether
> defendant intended to testify.  After some discussion, the court ruled that the
> information could not be mentioned in opening statement, and could not be
> mentioned at all until the court determined that defendant had "opened the
> door" by testifying that the shooting was an accident, or that he never carried
> a gun, or that he had a reputation for being peace loving.  Defendant never
> testified, and the information was never provided to the jury.  We find no
> error.  The court's ruling was adequate to provide guidance to defendant in
> deciding whether to testify.  The court made clear that the information would
> not reach the jury unless defendant opened the door by testifying in a certain
> manner.  While defendant argues that both the defense and the court were
> "in the dark" regarding the prior bad acts because the prosecutor failed to
> provide discovery, it is clear that the defense was aware of the prior incident.

*Turner,* slip op. at 1-2.

In *Luce v. United States*, 469 U.S. 38 (1984), the Supreme Court considered, on

direct review, whether a federal district court's decision regarding the admissibility of a

defendant's prior convictions for impeachment is preserved for review where the

defendant did not testify.  The Court ruled that the issue is not preserved where the

defendant did not testify because, otherwise, any possible harm flowing from the district

court's ruling is "wholly speculative."  *Id.* at 41.  "Because an accused's decision whether

to testify 'seldom turns on the resolution of one factor,' *New Jersey v. Portash*, 440 U.S.

9

450, 467 (1979) (Blackmun, J., dissenting), a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify.  *Id.* at 42.

The Sixth Circuit Court of Appeals has applied the Supreme Court's reasoning in *Luce* to cases on habeas review from state court convictions, and held that, where a defendant does not testify, the issue is not preserved for federal habeas review.  *Zueski v. Grayson*, 81 F. App'x 849, 850 (6th Cir. Oct. 21, 2003); *Hall v. Grant*, No. 84-1531, 1985 WL 13926 * 3 (6th Cir. Nov. 20, 1985).  Thus, the Court concludes that, because Petitioner did not testify at trial, he cannot challenge on habeas review the trial court's decision regarding impeachment with a prior bad act.

Petitioner also argues that the prosecutor engaged in misconduct by failing to provide notice that he intended to use prior bad acts.  The Supreme Court has not held that the Constitution requires such prior notice.  *See Sluchak v.* Howes, No. 07-12633, 2010 WL 2740074, *6 (E.D. Mich. July 12, 2010).  Therefore, any violation in this regard would not be violative of the Constitution.

## C.

In his second and sixth claims for habeas corpus relief, Petitioner argues that the prosecutor engaged in misconduct by appealing to the jurors' civic duty in arguing for a conviction, making an argument that was not supported by evidence, commenting on Petitioner's failure to testify, shifting the burden of proof, and knowingly allowing false testimony to stand uncorrected.

"Prosecutorial misconduct may warrant habeas relief only if the relevant

10

misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)). The Court must first consider whether the prosecutor's conduct and remarks were improper, and, if so, consider the following four factors to determine "whether the impropriety was flagrant" and thus warrants habeas relief:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007) (internal quotations omitted).

Respondent argues that the prosecutorial misconduct claims are procedurally defaulted with the exception of the claim that the prosecutor improperly asked the jury to convict based upon civic duty.

## 1.

Petitioner argues that the prosecutor improperly injected a civic duty argument to the jury by telling the jury that Petitioner sought to be convicted of a lesser charge of manslaughter. The Michigan Court of Appeals held that the prosecutor's statement did not

11

inject a civic duty argument into the case: "When evaluated in context, the prosecutor made this comment while informing the jury how manslaughter differs from first-degree murder, and the comment was not made to broaden the factual issues beyond defendant's guilt or innocence." *Turner,* slip op. at 2.

A prosecutor has a "duty to refrain from improper methods calculated to produce a wrongful conviction." *Viereck v. United States*, 318 U.S. 236, 248 (1943). But "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001). In this case, the prosecutor's statement did not ask the jury to convict on the basis of civic duty. As held by the state court, considered in context, the prosecutor simply explained to the jury the difference between first-degree murder and manslaughter, and asked the jury to convict on first-degree murder on the basis of the evidence presented. The prosecutor's comment did not deprive Petitioner of a fundamentally fair trial and, therefore, did not constitute prosecutorial misconduct.

### 2.

Respondent argues that the remainder of Petitioner's prosecutorial misconduct claims are procedurally defaulted because the conduct was not objected to at trial and because the claim that the prosecutor failed to correct false testimony was presented for the first time on state court collateral review. Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of

12

procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

"Michigan's contemporaneous-objection rule requires that defendants make timely and specific objections at trial in order to preserve claims for appellate review." *Wallace v. Ludwick*, No. 08-11747, 2009 WL 2840500, at *3 (E.D. Mich. 2009) (citing *People v. Carines*, 460 Mich. 750, 597 N.W.2d 130, 137-42 (1999); *People v. Grant*, 445 Mich. 535, 520 N.W.2d 123, 128 (1994)). The state court relied upon the contemporaneous-objection rule, an adequate and independent state procedural rule, when addressing all but the civic duty claim, which was addressed on the merits, and the false evidence claim, which was not raised on direct appeal. *See Jones v. Trombley*, 307 F. App'x 931, 932 (6th Cir. 2009) (recognizing Michigan's contemporaneous-objection rule as a firmly-established and regularly-followed procedural rule). The Michigan Court of Appeals also conducted a plain-error review of these claims. A state appellate court's plain-error review of a procedurally defaulted claim does not waive the procedural default. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). Therefore, these claims are procedurally defaulted

13

unless Petitioner can show cause and prejudice to excuse the default or that failure to consider the claims would result in a miscarriage of justice.

Petitioner's claim that the prosecutor knowingly presented false testimony was raised for the first time on state court collateral review. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit recently has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

The state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner could not establish cause and prejudice because his underlying claim lacked merit and that he had not shown that a miscarriage of justice had occurred. Accordingly, Petitioner's false-evidence claim is also procedurally defaulted.

14

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of trial counsel to excuse his default of those claims raised on direct review and ineffective assistance of appellate counsel as cause to excuse the false-evidence claim. *See Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000) ("[I]neffective assistance of counsel can provide the necessary 'cause' for the procedural default"). The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead

15

[has] emphasized that the proper measure of attorney performance remains simply

reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521

(2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Strickland*, 466 U.S. at 687.  The petitioner must show "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id.* at 694.  Unless the petitioner demonstrates both deficient performance and

prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in

the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __

U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest
> 'intrusive post-trial inquiry' threaten the integrity of the very adversary
> process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-
> 90.  Even under *de novo* review, the standard for judging counsel's
> representation is a most deferential one.  Unlike a later reviewing court, the
> attorney observed the relevant proceedings, knew of materials outside the
> record, and interacted with the client, with opposing counsel, and with the
> judge. . . . The question is whether an attorney's representation amounted to
> incompetence under 'prevailing professional norms,' not whether it deviated
> from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult.  The standards created by
> Strickland and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct.
> 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138

L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, __ U.S. __, 131 S. Ct. at 788.

Here, the Michigan Court of Appeals held that counsel was not ineffective because "the prosecutor's conduct was either proper or had no impact on the outcome of the trial." *Turner*, 2008 WL 1387056, at *3. Though the state court's decision on this issue lacked an explanation, the decision is still owed deference under the AEDPA. *Richter*, __ U.S. __, 131 S. Ct. at 784. The Court considers in turn each instance of alleged prosecutorial misconduct to evaluate whether the state court's decision that counsel was not ineffective in failing to object was a reasonable application of Supreme Court precedent.

### a.

First, Petitioner argues that the prosecutor improperly commented on Petitioner's failure to testify. The prosecutor characterized the case as follows: "[T]his case is uncontested in terms of facts and what happened." Tr., Vol. III at 51. The prosecutor also made the following argument in closing: "You know, [defense counsel] can make any argument if he wants on behalf of Mr. Turner, but at the end of the day, provides no evidence in terms of his comments to you." *Id.* at 98. The prosecutor further argued:

Just because that sheet was up in that door, doesn't mean that Chonte and

17

> Charlotte didn't know what happened to their mother, who did it, he was right there in front of them. I mean, he's got to say something. He's got to come [up] with some excuse.

Tr., Vol. III. at 97.

A prosecutor's direct reference to a criminal defendant's failure to testify in his own defense is a violation of the Fifth Amendment privilege against compelled self-incrimination. *Griffin v. California*, 380 U.S. 609 (1965). "Indirect references on the failure to testify can also violate the Fifth Amendment privilege." *Byrd v. Collins*, 209 F.3d 486, 533 (6th Cir. 2000).

The Sixth Circuit Court of Appeals has held comments during closing arguments similar to those challenged in this case to constitute misconduct. In *Girts v. Yanai*, 501 F.3d 743 (6th Cir. 2007), the petitioner challenged his murder conviction for the death of his spouse by cyanide poisoning. The prosecutor argued: "[W]e don't have to tell you how it [cyanide] was introduced into her system. We know that is was ingested. And there is only one person that can tell you how it was introduced, and that's the defendant." *Id.* at 748. The Court of Appeals held that the prosecutor's arguments "were anything but a comment on the evidence" and "[b]y indicating that Petitioner was the 'only one person' who could explain the crime to the jury, the prosecutor highlighted the fact that Petitioner did not testify, and attached a negative connotation to the exercise of the Fifth Amendment right to remain silent." *Id.* at 756. The Court of Appeals further held that counsel's failure to object to these comments was deficient and that Petitioner was prejudiced by this deficiency. *Id.*

18

In this case, the prosecutor's arguments that Petitioner "provides no evidence in terms of his comments to you" and "[h]e's got to say something. He's got to come [up] with some excuse" are clearly inappropriate comments on the Petitioner's failure to testify. Competent counsel would have objected to these comments. Nevertheless, Petitioner cannot establish that counsel was ineffective unless he shows that the state court's conclusion that he was not prejudiced by the prosecutor's conduct was an unreasonable application of *Strickland*.

The evidence incriminating Petitioner was overwhelming. Felicia Watson's two daughters, Charlotte and Chonte Wilson, were in their bedroom on the top floor of their bungalow home when the shooting occurred. Their bedroom was separated from their mother's by a sheet. Both girls testified that they were awakened by gunshots and that Petitioner fired the shots. Charlotte testified that after she heard the shooting, she saw Petitioner chase Aradondo Collins downstairs.

Collins testified that Petitioner came into the bedroom where he and Felicia were sleeping. Felicia pushed Petitioner away. Petitioner left. Petitioner returned moments later and started shooting. Although there were some inconsistencies in the testimony of these witnesses, their testimony was not inconsistent on the material facts – the identity of the shooter and that the shooter left and then returned. Additionally, several other witnesses corroborated the circumstances surrounding the shooting. Thus, the evidence against Petitioner was indisputably strong.

The Court is troubled by the prosecutor's inappropriate comments, which do not

19

fall within a gray area between proper and improper.  They clearly were improper and defense counsel should have promptly objected and moved for a curative instruction. Nevertheless, because the evidence against Petitioner was overwhelming and because the Court owes a "doubly" deferential standard of review to the state court's holding, the Court finds that the state court's finding that no prejudice resulted is not an unreasonable application of *Strickland*.  This claim is therefore procedurally defaulted unless Petitioner demonstrates "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Petitioner must assert a constitutional error along with a claim of innocence.  To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt."  *Id.* at 327.

Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty.  Therefore, Petitioner's claim is procedurally barred.[1]

Moreover, even assuming that this prosecutorial misconduct claim was not procedurally defaulted, the error is subject to a harmless error analysis.  *Mason v. Mitchell*,

---

[1]  The conclusion that Petitioner fails to demonstrate a showing of actual innocence and, therefore, fails to satisfy the miscarriage of justice standard is applicable to all of Petitioner's procedurally defaulted claims and will not be discussed separately for each of them.

320 F.3d 604, 635 (harmless error analysis applies to claims of prosecutorial misconduct).

The prosecutor's comments constitute misconduct that should be condemned. But, the test

for whether an error is harmless is not the inappropriateness of the conduct. It is whether

the conduct had a "substantial and injurious effect or influence in determining the jury's

verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). When a federal court judge in

a habeas proceeding is in "grave doubt" about whether a trial error of federal constitutional

law had a substantial and injurious effect or influence in determining the jury's verdict, the

error is not harmless and the petitioner must prevail. *O'Neal v. McAninch*, 513 U.S. 432,

436 (1995). Only if a federal habeas court can say with certainty that a trial error had little

or no impact on the judgment, should the judgment stand. *See Barker v. Yukins*, 199 F.3d

867, 874 (6th Cir. 1999).

     As discussed above, overwhelming evidence of Petitioner's guilt was presented at

trial. The Court harbors no "grave doubt" that the prosecutor's comments in closing had a

"substantial and injuries effect or influence in determining the jury's verdict." *Brecht*, 50

U.S. at 436. Habeas relief is denied.

**b.**

     Next, Petitioner argues that the prosecutor argued facts not in evidence when,

during closing argument, he argued that the victim's gunshot wounds could not have been

preceded by a struggle and that Felicia Watson was shot in front of her two children. In

fact, the pathologist testified that the gunshots could have been preceded by a struggle, and

there was some conflicting testimony about whether the children actually saw their mother

being shot or saw Petitioner immediately before and after the shooting.  The Michigan

Court of Appeals held that the comments likely did not affect the outcome of the trial.  The

prosecutor's comment that there was no evidence of a struggle, although apparently

misstating the testimony presented, "was not so pronounced and persistent that it

permeate[d] the entire atmosphere of the trial."  *Pritchett v. Pitcher*, 117 F.3d 959, 964

(6th Cir. 1997) (internal quotation omitted).  The prosecutor's comment that Felicia

Watson was shot in view of her children is not a clear misstatement of the evidence

presented at trial.  Additionally, the trial court cautioned the jurors that what the lawyers

said was not evidence.  *See United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001)

("Ordinarily, a court should not overturn a criminal conviction on the basis of a

prosecutor's comments alone, especially where the district court has given the jury an

instruction that may cure the error.").  Petitioner presents no evidence to suggest that the

prosecutor intentionally misstated the evidence.  Based upon the foregoing, the Court

concludes that the state court's decision that counsel was not ineffective was not contrary

to or an unreasonable application of *Strickland*.  Therefore, Petitioner fails to establish

cause to excuse the procedural default of this claim.

### c.

Petitioner next argues that the prosecutor improperly shifted the burden of proof

when he stated that Petitioner failed to provide any evidence in his defense.  Pointing out

the defense's failure to produce evidence to contradict or call into question the prosecution

evidence does not amount to an attempt by the prosecutor to shift the burden of proof.

22

Moreover, the trial court's instructions to the jury unambiguously established that the prosecutor bore the burden of proof with respect to each element of the crimes. Therefore, Petitioner has failed to show prosecutorial misconduct with respect to this claim and counsel, accordingly, was not ineffective in failing to object.

### d.

Finally, Petitioner argues that the prosecutor knowingly presented false testimony because the trial testimony of Charlotte Watson and Aradondo Collins was inconsistent with statements they gave to the police following the shooting. This claim was presented for the first time in Petitioner's motion for relief from judgment. The trial court, although finding the claim procedurally barred, held that while the testimony was inconsistent in some parts, these inconsistencies "presented, at best, a question of fact and credibility." *Turner,* slip op. at 4.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotation omitted). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). A conviction obtained by the knowing use of perjured testimony must be set aside "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .'" *Giglio*, 405 U.S. at 154 (*quoting Napue*, 360 U.S. at 271); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976). In order to prove this claim, a petitioner must show that

23

(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1999). Petitioner has the burden of proving a

*Giglio* violation. *Malcum v. Burt*, 276 F. Supp.2d 664, 684 (E.D. Mich. 2003),

*citing* Foster v. Ward, 182 F.3d 1177, 1191 (10th Cir. 1999).

Petitioner has highlighted some inconsistencies in Charlotte Watson's and Collins's trial testimony, but has failed to demonstrate that any of the testimony was false, rather than simply the result of confusion or an uncertain memory. A prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty. Petitioner has failed to show that the prosecutor presented false testimony. Therefore, he has failed to show that appellate counsel was ineffective in failing to raise this claim on direct review and the claim is procedurally defaulted.

### D.

Petitioner next argues that habeas relief should be granted because he was denied the effective assistance of counsel. Specifically, Petitioner argues that trial counsel was ineffective in failing to: (i) request full disclosure of the circumstances of Petitioner's felonious assault conviction; (ii) request a firm ruling on the admissibility of that information; (iii) object to prosecutorial misconduct; and (iv) advise Petitioner as to the trial court's ruling regarding the admissibility of prior bad acts. The claim based on counsel's failure to object to prosecutorial misconduct is addressed above.

The Michigan Court of Appeals denied Petitioner's ineffective assistance of

counsel claims, holding, in relevant part:

> For claims of ineffective assistance of counsel, the burden is on the defendant to show:
>
>> with regard to counsel's performance, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . [and] that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  [*People v LeBlanc*, 465 Mich. 575, 578; 640 N.W.2d 246 (2002), quoting *Strickland v Washington*, 466 U.S. 668, 687; 104 S. Ct. 2052; 80 L. Ed. 2d 674 (1984).]
>
> Defendant claims that trial counsel was deficient for failing to press the trial court for a firm ruling on his motion to suppress the prior bad acts evidence.  However, this inaction by trial counsel cannot form the basis of defendant's ineffective assistance of counsel claim because the trial court did, in fact, make a clear ruling on defendant's motion to suppress the prior bad acts evidence.  A defendant cannot base a claim of ineffective assistance of counsel on his attorney's failure to make a futile objection or motion. *People v Fike*, 228 Mich. App. 178, 182; 577 N.W.2d 903 (1998).
>
> Defendant also claims that he was denied effective assistance of counsel due to counsel's failure to request a copy of defendant's criminal record from the prosecution and by failing to fully inform the court of the circumstances surrounding defendant's prior convictions.  These two claims of ineffective assistance of counsel also fail because defendant has failed to show how counsel's actions were deficient or how they affected his decision to forgo testifying.  The court had ruled that the evidence was inadmissible except under certain specific circumstances.  Defendant has not shown how further information would have affected his decision.

*Turner*, slip op. at 2-3.

The Court finds that the Michigan Court of Appeals' decision was not contrary to or an unreasonable application of *Strickland*.  Petitioner has failed to show that he was prejudiced by any of trial counsel's decisions.  As the Michigan Court of Appeals

explained, counsel asked for and received a ruling regarding the prior bad acts evidence. Petitioner has failed to demonstrate how counsel could have secured a different ruling or that a different ruling would have been appropriate.  Finally, Petitioner has not shown that his attorney incorrectly advised him regarding the Court's ruling on the admissibility of the prior bad acts.  Thus, habeas relief is denied on Petitioner's ineffective assistance of counsel claims.

## E.

Petitioner argues that insufficient evidence was presented to prove, beyond a reasonable doubt, that he was guilty of first-degree murder, first-degree home invasion, or assault with intent to commit murder.  Respondent argues that this claim is also procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  The Court finds that the interests of judicial economy are best served by addressing the merits of the sufficiency of the evidence claim.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier

26

of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Id.* at 319.  Pursuant to 28 U.S.C. § 2254(d)(1), this court must determine whether the state

court's application of the *Jackson* standard was contrary to or an unreasonable application

of Supreme Court precedent.  In making this determination, this court must afford the state

court's findings of fact a presumption of correctness unless it is established by clear and

convincing evidence that the factual determination in the state court was erroneous.  28

U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996).

The last state court to issue a reasoned opinion denying this claim was the trial

court in its denial of Petitioner's motion for relief from judgment.  The trial court held, in

pertinent part:

> Defendant argues that there was insufficient evidence.  He does not state for
> which charges he believes there to be insufficient evidence.  Generally, the
> prosecution must introduce evidence sufficient to justify a rational trier of
> fact in concluding that all of the essential elements of the crime were proven
> beyond a reasonable doubt. . . . .Testimony of complainant alone, if believed
> by the trier of facts, is sufficient to support a conviction. . . . A reviewing
> court must examine the evidence independently to determine whether "after
> viewing the evidence in the light most favorable to the prosecution, any
> rational trier of fact could have found the essential elements of the crime
> beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307 at 319; 99 S.
> Ct. 2781; 61 L.Ed. 2d 560 (1979).  In the instant case, there was testimony
> that Defendant forced his way into Decedent's home at 4:00 to 5:00 in the
> morning.  Once inside, he fought with a visitor who he later shot several
> times.  He also shot Decedent at point blank range in the chest and head.
> The testimony of several witnesses including her children and another
> visitor, all corroborated this, although at times their testimony differed.
> Viewed in the light most favorable to the prosecution, the essential elements
> of premeditated murder in the first degree have been proven to the point
> where a rational juror could find a verdict of guilty.

*Turner,* slip op. at 3-4.

Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. *People v. Marsack,* 586 N.W.2d 234, 371 (Mich. Ct. App. 1998). To prove the crime of assault with intent to commit murder under Michigan law, the prosecution must establish: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v. Hoffman*, 225 Mich. App. 103, 111; 570 N.W.2d 146 (1997). The intent to kill may be proven by inference from any facts in evidence. *Id.* Finally, to prove first-degree home invasion, the prosecution must show: (1) the defendant broke and entered a dwelling or entered the dwelling without permission; (2) when the defendant did so, he intended to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling; and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon. *People v. Sands*, 261 Mich.App. 158, 162, 680 N.W.2d 500, 503 (2004).

The evidence presented at trial, considered in the light most favorable to the prosecution, clearly supports Petitioner's convictions for these offenses. Thus, the Court finds no violation of Petitioner's federal rights.

**F.**

Finally, Petitioner alleges that his appellate attorney was ineffective in failing to raise meritorious issues on appeal.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims raised on collateral review and in the habeas petition.  Petitioner has failed to show that any of the omitted claims were potentially meritorious.  Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

**IV.**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or

deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court finds that jurists of reason could find the resolution of Petitioner's claim that the prosecutor committed misconduct in closing argument by referencing Petitioner's failure to testify to be debatable or wrong. Accordingly, the Court grants a certificate of appealability as to this issue. As to the remainder of Petitioner's claims, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted, and denies a certificate of appealability on the remaining claims.

**V.**

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** for Petitioner's claim that the prosecutor improperly commented on Petitioner's failure to testify and **DENIED** for the remaining claims.

30

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 24, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 24, 2011.

S/Denise Goodine
Case Manager

31